NOT DESIGNATED FOR PUBLICATION

No. 118,126

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KENNETH L. BERAN and JAMES WILLIAM AUBEL,
Coexecutors of the ESTATE OF JOANNA LEA AUBEL-JOHNSON
(formerly known as JOANNA LEA AUBEL),
*Appellants*,

v.

JAMES TOBIN JOHNSON, SUSAN RENEE ROSS
(aka SUSAN RENEE MOLLOHAN ROSS), and ROBERT JOEL MOLLOHAN,
*Appellees*.

MEMORANDUM OPINION

Appeal from Ellis District Court; GLENN R. BRAUN, judge. Opinion filed June 29, 2018.
Affirmed.

*Jeffrey A. Wietharn* and *Lance A. Weeks*, of Coffman, DeFries & Nothern, of Topeka, for
appellants.

*Donald F. Hoffman*, of Dreiling, Bieker & Hoffman, LLP, of Hays, for appellees.

Before GREEN, P.J., MCANANY and BRUNS, JJ.

PER CURIAM: This lawsuit was brought by Kenneth Beran and James William
Aubel, the coexecutors of the Estate of Joanna Lea Aubel-Johnson (Joanna), to challenge
the distribution of Joanna's assets at the time of her death.

Joanna and William (Bill) Aubel entered into a prenuptial agreement on March 28,
1986, the day before their marriage. Bill was a successful real estate developer with two
children born of a prior marriage. That marriage ended in divorce, and Bill still had

1

financial obligations to his former wife, Betty, at the time of this premarital agreement. Joanna was an experienced real estate broker who also had two children born of a prior marriage. Bill brought significant assets into the marriage. Joanna's assets were modest by comparison.

In order to cover Bill's support obligations to Betty, the prenuptial agreement required Bill to set up and maintain a trust from which the income would be used to pay his support obligations.

Further, Bill and Joanna agreed that if Joanna survived Bill, Joanna would be the lifetime beneficiary of the income from a trust consisting of the remainder of Bill's estate after specific bequests, and upon her death the remainder would go in fee simple and in equal shares to the four children. A nearly identical provision applied to Bill if he survived Joanna. A key provision of the prenuptial agreement was the following:

> "Notwithstanding the provisions of this agreement, either party shall have the right to transfer or convey to the other any property or interest therein which may be lawfully conveyed or transferred during his or her lifetime or by Will or otherwise upon death, and neither party intends by this agreement to limit or restrict in any way the right and power to receive any such transfer or conveyance from the other. It is specifically understood and agreed that the provisions herein shall in no manner restrict the parties from disposing of, dealing with, transferring, selling, utilizing or in any manner investing, reinvesting, spending, consuming or otherwise dealing with the property covered by this agreement."

On the day Bill and Joanna were married they both executed wills which were consistent with their prenuptial agreement.

As the years passed, Bill transferred various assets into joint tenancy with Joanna.

2

On January 8, 1996, Joanna made a new will. The following year, on March 15, 1997, Bill also made a new will which was consistent with Joanna's current will.

Thereafter, Bill's son Kenneth died leaving two children of his own. Then, on March 10, 2004, Bill and his ex-wife Betty settled Bill's ongoing support obligation to her by a lump sum payment from Bill, obviating the need for an ongoing trust for Betty.

On April 28, 2004, Joanna made a new will which made adjustments for the death of Kenneth. The following year Bill also executed a new will which deleted prior provisions for a trust for Betty because of his settlement of her support claims.

On January 17, 2005, Bill and Joanna's accountant reviewed their estate plan. He recommended splitting joint tenancy assets and putting them in their individual names in order to take full advantage of the marital exemption for estate tax purposes. He also noted that titling of assets individually would avoid the problem of a surviving spouse giving property to someone the deceased spouse would not have wanted. Following this advice, Bill and Joanna transferred about $6 million in joint tenancy property to themselves individually—about $3 million to each.

On September 25, 2008, Bill executed his final will. After making some specific devises and bequests to his surviving son and the children of his deceased son, he left the residue of his estate in trust for Joanna to receive the trust income for her life, with the remaining trust estate to be distributed at her death as follows: 40% to Bill's surviving son, 15% to each of the children of Bill's deceased son, and 15% to each of Joanna's children.

The next day, Bill died. Aside from the income from the trust Bill set up for Joanna for her life, she was the surviving joint tenant in the properties she previously held

3

with Bill, and she had the property that had formerly been in joint tenancy but placed in her separate name before Bill's death.

Joanna remarried about two years later. On August 7, 2010, she married James Tobin Johnson (Toby).

In each will Joanna executed during her marriage to Bill, Joanna made provisions for her two children and for Bill's two children. Her last will was executed during her marriage to Bill. She did not change her will after Bill's death, but she did transfer property she had previously held in joint tenancy with Bill before his death to a new joint tenancy with Toby. She also transferred the ownership of two homes in Hays and Manhattan that she had owned outright to herself and to Toby in joint tenancy. She also named Toby and her two children as surviving beneficiaries on various investment accounts at stock brokerage firms.

On November 28, 2014, Joanna died. The following year, on March 26, 2015, the coexecutors of her will brought this action against Toby and Joanna's two children. The coexecutors alleged that when Bill and Joanna married they executed joint, mutual, and contractual wills (Count I); and that Joanna breached the provisions in their joint, mutual, and contractual wills by making significant changes in the ownership and beneficiary designations on certain assets so that those assets would not flow through her estate upon her death (Count II). The coexecutors sought injunctive relief, requested that these assets be held in a constructive trust, and asserted those in possession of the assets should be required to return them to the estate. They asserted that the property to be distributed through Joanna's estate should be set aside to Bill's surviving child and his deceased son's two children and to Joanna's children in the percentages as set forth in the residuary clauses of Bill's and Joanna's wills.

4

The matter was tried to the court. The parties stipulated to certain facts, and the court heard testimony from Bill's son and Joanna's daughter, from Bill and Joanna's accountant, from the lawyer who had drafted the wills in question, and from the co-executors' expert on taxes and estates. The district court prepared detailed findings of fact and conclusions of law and denied relief on the coexecutors' petition. Stripped to the basics, the district court found:

- Bill and Joanna were both sophisticated in these matters. They understood the effect of a joint tenancy and the effect of separate ownership of property.
- Their accountant advised them on the adverse tax effects of joint tenancy.
- Bill and Joanna changed the division of their assets after getting the accountant's advice by evenly dividing into individual ownership about $6 million of property they previously held in joint tenancy.
- The plaintiffs failed to show clear and convincing evidence that Bill and Joanna had joint, mutual, and contractual wills that bound them to each other by contract. To find otherwise would require the court to ignore their intent in putting property in joint tenancies over the years.
- There was no showing that Joanna breached the prenuptial agreement.
- There was no evidence of an agreement between Bill and Joanna that on Bill's death Joanna would return the property previously deeded to her outright or in joint tenancy.
- Bill and Joanna had the right to title property or transfer their individual property as they wished.

The coexecutors appeal. They claim that (1) Joanna breached the prenuptial agreement by retitling assets after Bill's death, effectively removing them from the distribution of assets provided for in the prenuptial agreement and in her will; and (2) Bill's and Joanna's wills were joint, mutual, and contractual wills.

5

We have carefully considered the briefs of the parties and the excellent presentations of the parties in oral argument before us. We have also closely read Chief Judge Glenn R. Braun's 15-page decision that was filed on June 29, 2017. We have also considered Supreme Court Rule 7.042(b) (2018 Kan. S. Ct. R. 48) which permits us to affirm by summary opinion if we determine in a situation such as this that "(5) the opinion or findings of fact and conclusions of law of the district court . . . adequately explain the decision."

Judge Braun wrote a thoughtful, comprehensive, and legally correct analysis of the issues presented in this appeal. His findings of fact are supported by the record, he applied the proper burden of proof for the issues presented, and he provided an excellent analysis of the law as applied to the facts. We adopt Judge Braun's analysis under Supreme Court Rule 7.042(b) and conclude that the district court did not err in deciding there was no breach of the prenuptial agreement; and in deciding that because the coexecutors failed to sustain their burden of proving the existence of joint, mutual, and contractual wills, Joanna did not breach any contract by the manner in which she disposed of her property after Bill's death.

Affirmed under Rule 7.042(b)(5).